UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIRGINIA ROBISON, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>GENERAL MOTORS LLC,<br><br>    Defendant. | Case No.: 1:18-cv-01549 JLT<br><br>ORDER GRANTING MOTION TO DISMISS<br><br>(Doc. 5) |

The plaintiffs claim that when they purchased their truck in 2010, GM misrepresented the emissions the vehicle would produce and, consequently, they were misled into buying the truck.

I.    **BACKGROUND**

The plaintiffs purchased their new 2011 Chevrolet Silverado in November 2010.[1] (Doc. 1-1 at 16) When purchasing their truck, the plaintiffs "reviewed advertisements on [the defendant's] website and representative from [the defendant's] authorized dealer touting the efficiency, fuel

---

[1] Review of the merits of the motion to dismiss was made much more difficult by the repetitive nature of the complaint. Indeed, the Court questions whether plaintiff's counsel read the complaint give that many paragraphs were repeated in full. There are so many instances where the complaint repeats itself that it would not be a good use of the Court's resources to point them all out. As an example, the Court directs plaintiffs' counsel to ¶¶ 102-109 and ¶¶ 110-118. The Court has compared the instant complaint to those filed in the Fenner v. General Motors LLC, Case No. 1:17-cv-11661 TLL PTM case, and it is apparent that plaintiff's counsel here cut-and-pasted from that complaint into this one and that in doing so, plaintiffs' counsel lost track of what she copied resulting the in the complaint filed in this action. The Court expects more and Rule 11 contemplates more.

1

economy and power and performance of the engine." Id. at 22.  They specifically chose this vehicle because it was a "clean diesel" despite that they had to pay a premium for this vehicle over lesser equipped and gasoline models.  Id. at 21-22.

Seven years later, on December 1, 2017, the plaintiffs took their vehicle to an "authorized" repair facility because the "check engine light" was illuminated. (Doc. 1-1 at 37) The repair person discovered that the truck's "codes . . . indicated that the vehicle's Nitrous Oxide ("NOx") sensors showed a *completely different* level of pollution being emitted from the exhaust." Id. at 37, emphasis in the original.  The plaintiffs do not state the degree of difference between the level the sensors reported, the amount of NOx being released or explain how this information caused them to learn that their car did not conform to the advertisements or the warranty.  In any event, the assert they had no idea that this situation existed before this date. Id.

As it turns out, the pickup is equipped with three "defeat devices," each which operate "as an auxiliary emissions control device that reduces the effectiveness of the emission control system under conditions which may reasonably be expected to be encountered in normal vehicle operation and use." (Doc. 1-1 at 17) The plaintiffs allege that the defeat devices are intended to allow the vehicle to meet the EPA standards for emissions, but only in the EPA-testing conditions. Id.

At some point during the plaintiffs' ownership of the truck, the plaintiffs "delivered the subject vehicle to GENERAL MOTORS' authorized service representative(s), Momemtum Chevrolet, on multiple occasions.  The subject vehicle was delivered for repairs of the engine, electrical and transmission . . ." (Doc. 1-1 at 44.)  They do not detail whether these repairs relate to the defects at issue in this lawsuit.  The plaintiffs allege also that they delivered the pickup to a dealership in Taft, California. Id.  They allege that more than 30 days passed "[s]ince delivery of the subject vehicle to Taft Chevrolet Buick Pontiac" (Id.), though they do not explain why they delivered the pickup to Taft Chevrolet.

Consequently, the plaintiffs allege violations of the Song Beverly Act related to breaches of express and implied warranties and, apparently, the failure to return the vehicle in a compliant state within 30 days (Doc. 1-1 at 41-45) and fraud in the inducement due to intentional misrepresentation and concealment (Id. at 45-48).  The plaintiffs seek damages, rescission of the

purchase contract, civil penalties, punitive damages, and attorneys' fees and costs, among other relief. Id. at 49.

**II.     Legal Standard**

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the opposing party's pleadings. Dismissal of an action under Rule 12(b)(6) is proper where there is either a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1990). When considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the pleading party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). The inquiry is generally limited to the allegations made in the complaint. Lazy Y Ranch LTD v. Behrens, 546 F.3d 580, 588 (9th Cir. 2008).

Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). To overcome a Rule 12(b)(6) challenge, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. A claim is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A plausible claim is one which provides more than "a sheer possibility that a defendant has acted unlawfully." Id. A claim which is possible, but which is not supported by enough facts to "nudge [it] across the line from conceivable to plausible . . . must be dismissed." Twombly, 550 U.S. at 570.

A complaint facing a Rule 12(b)(6) challenge "does not need detailed factual allegations [but] a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the element of a cause of action will not do." Id. at 555 (internal citations omitted). In essence, "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under

3

some viable legal theory." Id. at 562. To the extent that any defect in the pleadings can be cured by the allegation of additional facts, the plaintiff should be afforded leave to amend, unless the pleading "could not possibly be cured by the allegation of other facts. Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc., 911 F.2d 242, 247 (9th Cir. 1990).

### III. Statute of limitations

#### A. Late discovery exception

In general, a claim of fraud must be filed within three years. Cal. Code Civ. Proc. § 338(d). However, the action does not accrue "until the discovery, by the aggrieved party, of the facts constituting the fraud of mistake." Id. Though the complaint *concludes* the facts giving rise to the complaint could not have been discovered before December 1, 2017, there are few *facts* to support this conclusion. They allege that "on multiple occasions" before December 1, 2017[2], they took the pickup to Momentum Chevrolet "for repairs of the engine, electrical and transmission which amount to nonconformities to the express warranties . . ." (Doc. 1-1 at 44). Despite their argument to the contrary (Doc. 6 at 8), they do not allege facts to support whether any of these repairs implicated the alleged defeat devices, whether the vehicle operated in a manner before December 2017 that could have given rise to notice or, even, if the repairs implicated the emissions systems, what occurred to give rise to the repair. (Doc. 1-1 at 44 ¶ 151). Likewise, they fail to explain how the repair On December 1, 2017 revealed the defects at issue in this litigation. They allege also that at some time in their ownership, they took the truck to Taft Chevrolet but fail to explain how many times they took it there, when they took it there, why they took it there or whether any repair at Taft Chevrolet implicated the emissions nonconformity. Id.

To invoke the "late discovery" exception to the limitation period, the plaintiffs are obligated to allege sufficient *factual* detail to support that they did not and could not have discovered the fraud earlier. Fox v. Ethicon Endo-Surgery, Inc., 35 Cal.4th 797, 803 (2005). To sufficiently plead this exception the plaintiff "must specifically plead facts to show (1) the time

---

[2] The defense argues that the plaintiffs discovered "obvious defects that they experienced during the warranty period" and cite paragraph 9 of the complaint for this proposition (Doc. 5 at 11) However, paragraph 9 does not admit this. Rather, it alleges that the vehicle has had "serious" defects and failures to conform to the warranty since the time of the sale and that others developed later. (Doc. 1-1 at 9) It does not allege the defects were obvious or that they were discovered "during the warranty period."

4

and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." Id. at 808 (quoting McKelvey v. Boeing North American, Inc., 74 Cal. App. 4th 151, 160 (1999) "[T]he limitations period begins when the plaintiff suspects, or should suspect, that she has been wronged." Jolly v. Eli Lilly & Co., 44 Cal.3d 1103, 1114 (1988).

The Court finds that the complaint, though providing an inordinate amount of detail related to the emissions defects of the vehicle and completely unrelated vehicles, and many *conclusions* related to the late discovery of the nonconformities (Jackson v. Master Holding Corp., 16 Cal.2d 824, 828 (1940)), it provides few factual allegations about the plaintiffs' specific situation. The mere fact that the defendant repaired the pickup and told the plaintiffs it was repaired[3], is not sufficient. Finney v. Ford Motor Co., 2019 WL 79033, at *3 (N.D. Cal. Jan. 2, 2019). Thus, the complaint fails to provide sufficient factual detail to invoke the late discovery exception to the limitation period.

**B.    Class action tolling**

A class action lawsuit may toll the statute of limitations for claims that have not run by the time of its filing; it cannot revive the statute of limitations for those claims that have already run. American Pipe & Construction Co. v. Utah, 414 U.S. 538, 552-556 (1974); Mills v. Forestex Co., 108 Cal.App.4th 625, 651–652 (2003) (quoting Forman v. Chicago Title Ins. Co. 32 Cal.App.4th 998, 1006 (1995)). The plaintiffs, though alleging that the statute of limitations is tolled by the filing of the class action (Doc. 1-1 at 38-39), the Fenner v. General Motors LLC, Case No. 1:17-cv-11661 TLL PTM, do not address the arguments in the motion to dismiss (Doc. 5 at 12-13) that Fenner cannot toll the accrual of their action.

If the plaintiffs are correct that Fenner tolled their statute of limitations, tolling would not have begun until May 25, 2017 when they allege Fenner was filed (Doc. 1-1 at 38). However, unless they establish an exception, the statute of limitations in this case expired in November 2013 (See Doc. 1-1 at 16). Consequently, American Pipe would provide them no relief.

///

---

[3] As noted, the plaintiff has failed to allege information as to whether the dealer told the plaintiffs the pickup was repaired, whether the repair implicated the emissions system and when the repairs occurred.

5

**B.     Equitable tolling**

A plaintiff may be entitled to the benefits of equitable tolling to extend the deadline to timely file a lawsuit. See Nat'l R.R. Passenger Co. v. Morgan, 536 U.S. 101, 122 (2002). Equitable tolling under California law "'operates independently of the literal wording of the Code of Civil Procedure to suspend or extend a statute of limitations as necessary to ensure fundamental practicality and fairness.'" Jones v. Blanas, 393 F.3d 918, 928 (9th Cir. 2004) (quoting Lantzy v. Centex Homes, 31 Cal.4th 363, 370 (2003)). Equitable tolling applies when the "wrongful conduct on the part of the defendant" prevent the timely filing of the complaint or "extraordinary circumstances beyond plaintiffs' control which made it impossible to file their claims on time." Seattle Audubon Soc'y v. Robertson, 931 F.2d 590, 595 (9th Cir. 1991); Cervantes v. Countrywide Home Loans, Inc., 656 F.3d 1034, 1045-1056 (9th Cir. 2011). Courts should apply the doctrine of equitable tolling "sparingly." Scholar v. Pacific Bell, 963 F.2d 264, 267 (9th Cir. 1992).

"Under California law, a plaintiff must meet three conditions to equitably toll a statute of limitations: '(1) defendant must have had timely notice of the claim; (2) defendant must not be prejudiced by being required to defend the otherwise barred claim; and (3) plaintiff's conduct must have been reasonable and in good faith.'" Fink v. Shedler, 192 F.3d 911, 916 (9th Cir. 1999) (quoting Bacon v. City of Los Angeles, 843 F.2d 372, 374 (9th Cir. 1988)). Equitable tolling is inappropriate, however, "where the claimant failed to exercise due diligence in preserving [her] legal rights." Irwin v. Dep't of Veteran Affairs, 498 U.S. 89, 96 (1990).

The plaintiffs' complaint asserts that they are entitled to equitable tolling related to the statute of limitations for their claims.  (Doc. 1-1 at 40) Oddly, the title of this section of the complaint refers to Sloan v. General Motors, but the plaintiffs provide no other information about that case or how it relates to them.  On the other hand, the body of this section of the complaint refers to Fenner v. General Motors LLC, Case No. 1:17-cv-11661 TLL PTM.  In their opposition to the motion to dismiss, they do not address the defense's argument regarding equitable tolling.

For an earlier lawsuit to provide the basis for equitable tolling, "[t]he timely notice requirement essentially means that the first claim must have been filed within the statutory period." Downs v. Dep't of Water & Power, 58 Cal.App.4th 1093, 1100 (1997) (quoting (Collier v. City of

Pasadena, 142 Cal.App.3d 917, 922-923 (1983)). However, as noted above, Fenner was filed after the expiration of the plaintiffs' statute of limitations. Also, as noted above, there are insufficient facts alleged to demonstrate the plaintiffs acted reasonably and in good faith and, nevertheless, failed to discover the defect. See Torres v. Ford Motor Company, 2018 WL 2088268, at *3 n. 2. Thus, the complaint fails demonstrate the plaintiffs are entitled to equitable tolling.

**II.  Fourth and fifth causes of action for fraud**

   **A.  Fraud must be plead with factual specificity**

To establish a claim that the defendant fraudulently induced the plaintiff to enter into a contract, the plaintiff must establish the defendant made a misrepresentation or concealed a material fact, knowing of the falsity to induce the plaintiff to enter into the contract, the plaintiff justifiably relied upon the misrepresentation and, consequently, suffered damage. Engalla v. Permanente Med. Group, Inc., 15 Cal.4th 951, 974 (1997). These factual allegations must comport with the requirements of Fed.R.Civ.P. 9. Rule 9 requires sufficient factual allegations setting forth "the circumstances constituting the alleged fraud" with a description "'specific enough to give defendants notice of the particular misconduct ... so that they can defend against the charge and not just deny that they have done anything wrong.'" Kearns v. Ford Motor Co., 567 F.3d 1120, 1124 (9th Cir. 2009) (citation omitted). Fraud claims must allege "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007) (per curiam) (internal quotation marks omitted); see also Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003) ("Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." (internal quotation marks omitted)).

Despite the pleading standards, the plaintiffs fail to identify the advertisements they reviewed, when they reviewed them and which of the advertising messages they found to be persuasive and relied upon. (Doc. 1-1 at 22) Generalized references to marketing materials without factual allegations tying them to the plaintiffs, fail to meet the requirements of Rule 9.

   **B.  Economic loss rule**

Because the plaintiffs have failed to sufficiently plead their fraudulent inducement claim,

the Court declines to consider whether the claims are barred by the economic loss doctrine.

**ORDER**

For the reasons set forth, the Court **ORDERS**:

    1.    The motion to dismiss (Doc. 5) is **GRANTED** with 21 days leave to amend. Should the plaintiffs choose not to amend within this time period, the action will proceed with the remaining claims;

    2.    The scheduling conference is **CONTINUED** to March 28, 2019 at 9:15 a.m.

IT IS SO ORDERED.

Dated: **February 8, 2019**　　　　　　　　**/s/ Jennifer L. Thurston**
　　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE