# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIRGINIA ROBISON, et al., | Case No.: 1:18-cv-01549- JLT |
| Plaintiffs, | ORDER GRANTING DEFENDANT'S MOTION TO DISMISS |
| v. | (Doc. 19) |
| GENERAL MOTORS LLC, | |
| Defendant. | |

Virginia and Larry Robison purchased a Chevrolet Silverado in 2010, and assert GM made misrepresentations regarding the emissions the truck would produce. Plaintiffs contend GM is liable for violations of the Song-Beverley Act and fraud in the inducement, for intentional misrepresentation and concealment. (See Doc. 15) GM seeks dismissal of the fourth and fifth causes of action for fraud, asserting the claims are barred by the applicable statute of limitations, violate the economic loss rule, and are insufficiently plead. (Doc. 19) Plaintiffs oppose the motion, arguing the claims are subject to tolling and the facts support their claims for fraud. (Doc. 20)

The Court found the matter suitable for decision without oral arguments, and the motion was taken under submission pursuant to Local Rule 230(g). (Doc. 23) For the reasons set forth below, GM's motion to dismiss is **GRANTED**, and Plaintiff's fourth and fifth causes of action are **DISMISSED** with leave to amend.

///

1

## I. Background and Factual Allegations

"On November 18, 2010, Plaintiffs purchased a new 2011 Chevrolet Silverado 2500HD" from Taft Chevrolet Buick Pontiac, which is a GM authorized dealership. (Doc. 15 at 3, 23 ¶¶15, 90) Plaintiffs assert that prior to purchasing the vehicle, they "reviewed marketing brochures, including the brochure entitled 'The New Silverado HD,'…viewed television commercials, and/or heard radio commercial[s] about the qualities of the 2011 Chevrolet Silverado 2500HD, including increased fuel efficiency and reduced NOx emissions compared to prior models." (Id. at 23, ¶ 91) Plaintiffs allege they also "relied on statements and claims contained in these materials when deciding to purchase" the truck. (Id.) In addition, Plaintiffs allege they relied upon GM's "reputation as an established and experienced auto manufacturer" and "statements made during the sales process" by GM's agents. (Id. at 23-24)

In February 2011, plaintiffs allege they "delivered the Subject Vehicle to an authorized [GM] repair facility for repair" due to an "illuminated warning light for exhaust fluid, and a message that speed would be limited to 55 m.p.h. in four miles." (Doc. 15 at 24, ¶ 92) Plaintiffs allege the "technicians refilled the diesel exhaust fluid ('DEF') and reset the emissions system." (Id.) They assert a technician stated the vehicle "had been repaired and was safe to drive." (Id.)

In September 2011, Plaintiffs took their vehicle to a GM facility due to a recall. (Doc. 15 at 24, ¶ 93) Plaintiffs assert, "The repair facility technicians performed exhaust fluid calibration enhancements, according to the instructions in the applicable recall bulletin." (Id.) Plaintiffs allege, "the service technician represented to Plaintiffs that the Subject Vehicle had been repaired and was safe to drive," and "Plaintiffs reasonably relied on this representation by the service technician." (Id.) These repairs were covered under GM's written warranty. (Id.)

Plaintiffs report "the vehicle was running rough and the transmission was getting hot" when they took the truck to a GM facility in May 2012. (Doc. 15 at 25, ¶ 94) "Plaintiffs also complained of a lack of power and an illuminated service engine soon… light." (Id.) The repair technicians "identified a short and traced it to a broken … wiring harness." (Id.) After the wiring harness was replaced and the truck was taken on a test drive, the service technician and service advisor "represented to Plaintiffs that the [truck]… had been repaired and was 'operating OK…'" (Id.) Plaintiffs report they relied upon

these representations of the technician and advisor. (Id.)

Two years later, in June 2014, Plaintiffs took their truck to a GM facility after the "service engine soon" light was illuminated. (Doc. 15 at 25, ¶ 95) According to Plaintiffs,

> The repair facility technicians read the diagnostic test codes and identified an inoperable NOx sensor. The repair facility technicians also determined that it was necessary to perform a DEF regeneration. The service technician, identified as Technician No. 629, performed a test drive of the vehicle and reported that the Subject Vehicle "runs to specs." The Subject Vehicle was returned to Plaintiffs, and the service advisor, Scott (903), represented to Plaintiffs that the Subject Vehicle had been repaired and "runs to specs," and was safe to drive.

(Id.) Plaintiffs allege these repairs were also covered by GM's written warranty. (Id.)

Plaintiffs report they took the vehicle in for repairs again later that year, in October 2014, due to "an illuminated SES light, an illuminated check engine light, and an illuminated DEF light." (Doc. 15 at 25, ¶ 96) They allege an individual, "identified as Technician No. 600, identified a problem with the DEF pump, and removed and replaced the DEF pump, replaced the indirect injector, performed a regeneration, and replaced a failed NOx sensor." (Id. at 25-26, ¶ 96) The repair facility technician performed a test drive and a reductant fluid quality test, informed Plaintiffs the truck was "operating to[] specs." (Id. at 26, ¶ 96) Plaintiffs assert they relied upon the service advisor's representations that the vehicle was repaired, operating to specifications, and safe to drive. (Id.)

In July 2016, the SES light was illuminated in Plaintiff's truck and a message indicated the DEF tank was empty. (Doc. 15 at 26, ¶ 97) Plaintiffs took their vehicle to a GM facility, where Service Technician No. 600 again worked on the vehicle. (Id.) Plaintiffs allege technicians "identified a shorted TEM sensor," "removed and replaced the DEF reservoir, refilled DEF, and reset the system data." (Id.) According to Plaintiffs, Technician No. 600 "performed a test drive of the vehicle and report … [it] was 'operating to specs' and had 'no problems at [that] time.'" (Id.) Plaintiffs allege they were also told by a service advisor named Pedro that their truck was repaired, "operating to specs" without problems, "and was safe to drive." (Id.) They assert they replied upon the representations of both the technician and advisor. (Id.)

The following year, on December 1, 2017, Plaintiffs "complained of an illuminated check engine light and a 'poor exhaust quality fluid' message" in their truck, which they took to a GM facility. (Doc. 15 at 26, ¶ 98) Plaintiffs allege:

> The repair facility read the diagnostic test codes from the Subject Vehicle, and upon inspection found that NOx sensors 1 and 2 reported "skewed" data. The service technician, identified as Technician No. 687, removed and replaced the NOx sensors and performed a diesel particulate filter regeneration. The service technician performed a reductant fluid quality test and reported that the Subject Vehicle was "operating to spec" and had "no problems at this time." The Subject Vehicle was returned to Plaintiffs, and the service advisor, Pedro (1012), represented to Plaintiffs that the Subject Vehicle had been repaired, was operating normally with "no problems at this time," and was safe to drive.

(Doc. 15 at 26-27, ¶ 98) Plaintiffs assert they relied upon these representations "by the personnel at the authorized [GM] repair facility." [1] (*Id.* at 27, ¶ 98)

In February 2018, Plaintiffs had their vehicle towed to a GM facility after suffering "a sudden loss of power and violent shaking" while driving on a freeway. (Doc. 15 at 27, ¶ 99) They allege repair technicians "found that the glow plugs had shorted open and that there was high resistance in two of the injectors," which were then replaced. (Id.) Plaintiffs assert that "Technician No. 726… performed a road test … and noted that the Subject Vehicle 'rechecked OK.'" (Id.) Plaintiffs contend Pedro informed them the truck was repaired, operating normally, and safe to drive. (Id.) Plaintiffs relied upon these representations. (Id.)

Plaintiffs assert their vehicle had "serious defects and nonconformities to warranty and developed other serious defects and nonconformities to warranty" following the purchase. (Doc. 15 at 3, ¶ 8) In particular, Plaintiffs contend their pickup was equipped with three "defeat devices," which "turn down the emissions controls" and "reduce[] the effectiveness of the emission control system under conditions which may reasonably be expected to be encountered in normal vehicle operation and use." (Id. at 4, ¶ 18) Plaintiffs allege the defeat devices are intended to allow the truck to meet the EPA standards for emissions, but only in the EPA-testing conditions. (See id. at 4-5) According to Plaintiffs, had they known the emissions were not as promised, they "would not have purchased the vehicle or would have paid less for it." (Id., at 9, ¶ 35)

Plaintiffs allege violations of the Song Beverly Act for breach of the express warranty, breach

---

[1] This contradicts their previous complaint in which the plaintiffs admitted they first could have learned of the defeat devices in the emissions system when they asserted, "On or about December 1, 2017, Plaintiffs delivered the vehicle to an authorized GENERAL MOTORS repair facility because the Check Engine light ("CEL") was illuminated. The repair facility technicians scanned the vehicle's codes and indicated that the vehicle's Nitrous Oxide ("NOx") sensors showed completely different level of pollutants being emitted from the exhaust." (Doc. 1 at 42)

4

of the implied warranty, and failure to return the vehicle in a compliant state within thirty days. (Doc. 15 at 33-37) In addition, Plaintiffs assert GM is liable for fraud in the inducement due to intentional misrepresentation and concealment. (Id. at 37-41) GM seeks dismissal of the causes of action based upon fraud pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 19)

## II.     Legal Standards

A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a claim." Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal under Rule 12(b)(6) is appropriate when "the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008). On a motion filed pursuant to Rule 12(b)(6), "review is limited to the complaint alone." Cervantes v. City of San Diego, 5 F.3d 1273, 1274 (9th Cir. 1993).

Allegations of a complaint must be accepted as true when the Court considers a motion to dismiss for failure to state a claim. Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976). The Supreme Court explained, "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The Supreme Court explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.

Iqbal, 556 U.S. at 678 (internal citations, quotation marks omitted).

A court must construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in favor of the plaintiff. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969). "The issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). However, the Court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead

sufficiently all required elements of a cause of action." Student Loan Marketing Assoc. v. Hanes, 181 F.R.D. 629, 634 (S.D. Cal. 1998). Leave to amend should not be granted if "it is clear that the complaint could not be saved by an amendment." Livid Holdings Ltd. v. Salomon Smith Barney, Inc., 416 F.3d 940, 946 (9th Cir. 2005).

### III. Discussion and Analysis

GM contends Plaintiff's fourth and fifth causes of action are barred by the statute of limitations. (Doc. 19 at 2, 10-11) In addition, GM contends Plaintiffs' claims violate the economic loss rule and are insufficiently plead. (Id. at 2-3, 15-22) Therefore, GM contends the causes of action based on fraud should be dismissed.

#### A. Heightened Pleading Standard

As an initial matter, because Plaintiffs' fourth and fifth causes of action are subject to the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure, which requires Plaintiffs to state "with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); see also Kearns v. Ford Motor Co., 567 F.3d 1120, 1126 (9th Cir. 2009) (when a plaintiff's claim is "grounded in fraud," and the plaintiff must satisfy the particularity requirement of Rule 9).

To avoid dismissal for failure to meet the heightened pleading standards under Rule 9(b), "[a] complaint would need to state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." Edwards v. Marin Park, Inc., 356 F.3d 1058, 1066 (9th Cir. 2004); see also Kearns, 567 F.3d at 1126 (the plaintiff must articulate the "who, what, when, where, and how" of the fraud alleged"). "For corporate defendants, a plaintiff must allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written." Flowers v. Wells Fargo Bank, N.A., 2011 U.S. Dist. LEXIS 75429, 2011 WL 2748650, at *6 (N.D. Cal. July 13, 2011). Only factual allegations, rather than mere conclusions, satisfy this pleading burden. Moore v. Kayport Package Express, Inc., 885 F.2d 531, 540 (9th Cir.1989). If allegations of fraud do not meet the heightened pleading standard, the "averments . . . should be disregarded, or stripped from the claim for failure to satisfy Rule 9(b)." Kearns, 567 F.3d at 1124 (quotations omitted).

Inexplicably, despite the Court reminding them of their heightened pleading standard,

Plaintiffs fail to allege facts to meet it. They do not identify the people who made the misrepresentations or describe their authority to speak on behalf of GM. They do not allege with specificity the statements they claim were made to them or the information they learned before deciding to purchase the car. Given the language of the amended complaint—"and/or"—it is unclear whether Plaintiffs viewed a brochure[2], saw TV commercials, heard radio advertisements, or listened to statements made by unidentified salespersons—or none of the above—from the way the allegations are presented.[3] Further, there are no facts regarding which advertising messages Plaintiffs found persuasive, or the specific statements Plaintiffs relied upon in purchasing their vehicle. Merely alleging "Plaintiffs relied on statements and claims" is not sufficient to support their claims for fraudulent inducement. Consequently, the fraud claims are not cognizable and must be dismissed.

**B.     Statute of Limitations**

Under California law, a claim of fraud must be filed within three years. Cal. Code Civ. Proc. § 338(d). However, the action does not accrue "until the discovery, by the aggrieved party, of the facts constituting the fraud of mistake." Id.

In the First Amended Complaint, Plaintiffs allege this statute of limitations was tolled by the delayed discovery rule, the doctrine of fraudulent concealment, a prior class action, and the doctrine of equitable tolling. (See Doc. 15 at 27-32) GM argues Plaintiff fails to allege facts sufficient to support their tolling theories. (Doc. 19 at 11-15)

        1.     Delayed discovery

"A cause of action accrues when the claim is complete with all of its elements." Slovensky v. Friedman, 142 Cal. App. 4th 1518, 1528 (2006) (citation omitted). "Although this ordinarily occurs on

---

[2] For example, Plaintiffs added factual allegations concerning an undated brochure addressing Chevrolet's 2011 vehicles. (Doc. 15 at 17, ¶¶ 67-68) Either they read the marketing brochures viewed commercials or heard radio commercials or only received information from one of these sources. They state only vaguely that these sources discussed "increased fuel efficiency and reduced NOx emissions compared to prior models" and that they relied on statements made "during the sale." (Id. at 23, ¶ 90) It appears to the Court that counsel has failed to inquire of the client exactly what occurred. This fails to meet the obligations of Rule 11.

    Moreover, there is no allegation that the 2011 vehicle at issue did not have increased fuel efficiency or reduce NOx emissions compared to earlier models. Rather, this litigation seeks to impose liability because the defeat devices and it appear the truck met emissions standards when, in truth, it did not.

[3] Even opposing the motion to dismiss, Plaintiffs contend they "reviewed saw, **or** heard statements constituting the alleged misrepresentations…" (Doc. 21 at 16, emphasis added) These allegations, without more, fail to satisfy Rule 9.

7

the date of the plaintiff's injury, accrual is postponed until the plaintiff either discovers or has reason to discover the existence of a claim, i.e., at least has reason to suspect a factual basis for its elements." Id. at 1528-29 (citations omitted). "Plaintiffs are required to conduct a reasonable investigation after becoming aware of an injury, and are charged with knowledge of the information that would have been revealed by such an investigation." Id. at 1529 (citation and alteration omitted). "So long as there is a reasonable ground for suspicion, the plaintiff must go out and find the facts; [plaintiffs] cannot wait for the facts to find [them]." Id. (citation omitted).

To invoke the "late discovery" exception to the limitation period, the plaintiffs are obligated to allege *factual* detail to support that they did not and could not have discovered the fraud earlier. Fox v. Ethicon Endo-Surgery, Inc., 35 Cal.4th 797, 803 (2005). To sufficiently plead this exception, the plaintiff "must specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." Id. at 808 (quoting McKelvey v. Boeing North American, Inc., 74 Cal. App. 4th 151, 160 (1999) "[T]he limitations period begins when the plaintiff suspects, or should suspect, that she has been wronged." Jolly v. Eli Lilly & Co., 44 Cal.3d 1103, 1114 (1988).

Plaintiffs assert the facts giving rise to the complaint could not have been discovered prior to December 1, 2017, asserting: "It was not until Plaintiffs saw the "poor exhaust quality fluid" message on the instrument panel cluster and learned that the NOx sensors were reporting 'skewed' data that Plaintiffs could have learned of the irreparable defects in the Subject Vehicle's emissions system." (Doc. 15 at 29, ¶ 41) However, the facts alleged in the First Amended Complaint do not support the implication—let alone Plaintiffs' conclusion— that this was the first repair that implicated issues with the exhaust, emissions levels, or devices giving rise to the claims presented. Indeed, Plaintiffs allege they took the truck in for repairs several times over the years to GM facilities, beginning in February 15, 2011. (See id. at 24, ¶ 92) Likewise, in June 2014, Plaintiffs learned the truck had "an inoperable NOx sensor." (Id. at 25, ¶ 95) Again, in October 2014, technicians "replaced a failed NOx sensor." (Id. at 25-26, ¶ 96) These repairs implicated the emissions systems, yet Plaintiffs fail to offer any facts demonstrating that they could not have discovered the alleged defeat devices prior to December 2017 despite the repair history.

8

Though Plaintiffs allege they were told by repair technicians that the vehicle was repaired and "operating to specs," their reliance upon these statements is not sufficient. Finney v. Ford Motor Co., 2019 WL 79033, at *3 (N.D. Cal. Jan. 2, 2019). In Finney, the court observed the plaintiff took her vehicle to a dealership for several repairs, which related to her trucks alleged defects. The court observed that her "allegations that a Ford dealership told her after each of [the] four repairs that problems with her engine were fixed is not sufficient to plead delayed discovery." Id. at *3. The court noted there was no explanation in the pleading as to why "repeated problems" did not alert her to her claims, stating that based on the facts alleged, "Finney should have suspected something was amiss, regardless of representations that the problem was fixed." Id.

Because Plaintiffs fail to offer any explanation as to why their reliance upon the statements of the repair technicians was appropriate despite several repairs to the emissions system and NOx sensors, the facts alleged are again insufficient to support delayed discovery.

### 2. Class action tolling

Plaintiffs again alleged the statute of limitations is tolled by the filing of the class action, Fenner v. General Motors LLC, Case No. 1:17-cv-11661 TLL PTM. (Doc. 15 at 30-31). Previously, the Court explained that a class action lawsuit may toll the statute of limitations for claims that have not run by the time of its filing; it cannot revive the statute of limitations for those claims that have already run. American Pipe & Construction Co. v. Utah, 414 U.S. 538, 552-556 (1974); Mills v. Forestex Co., 108 Cal.App.4th 625, 651-652 (2003) (quoting Forman v. Chicago Title Ins. Co. 32 Cal.App.4th 998, 1006 (1995)).

Notably, Plaintiffs do not address GM's arguments in the motion to dismiss that Fenner cannot toll the accrual of their action. (Doc. 19 at 13-14) Nevertheless, this Court previously observed: "If the plaintiffs are correct that Fenner tolled their statute of limitations, tolling would not have begun until May 25, 2017 when they allege Fenner was filed. [citation] However, unless they establish an exception, the statute of limitations in this case expired in November 2013." Because Plaintiffs fail to identify any exception, American Pipe provides them no relief.

### 3. Equitable tolling

A plaintiff may be entitled to the benefits of equitable tolling to extend the deadline to timely

9

file a lawsuit. See Nat'l R.R. Passenger Co. v. Morgan, 536 U.S. 101, 122 (2002). Equitable tolling under California law "'operates independently of the literal wording of the Code of Civil Procedure to suspend or extend a statute of limitations as necessary to ensure fundamental practicality and fairness.'" Jones v. Blanas, 393 F.3d 918, 928 (9th Cir. 2004) (quoting Lantzy v. Centex Homes, 31 Cal.4th 363, 370 (2003)). Equitable tolling applies when the "wrongful conduct on the part of the defendant" prevent the timely filing of the complaint or "extraordinary circumstances beyond plaintiffs' control which made it impossible to file their claims on time." Seattle Audubon Soc'y v. Robertson, 931 F.2d 590, 595 (9th Cir. 1991); Cervantes v. Countrywide Home Loans, Inc., 656 F.3d 1034, 1045-1056 (9th Cir. 2011). Courts should apply the doctrine of equitable tolling "sparingly." Scholar v. Pacific Bell, 963 F.2d 264, 267 (9th Cir. 1992).

"Under California law, a plaintiff must meet three conditions to equitably toll a statute of limitations: '(1) defendant must have had timely notice of the claim; (2) defendant must not be prejudiced by being required to defend the otherwise barred claim; and (3) plaintiff's conduct must have been reasonable and in good faith.'" Fink v. Shedler, 192 F.3d 911, 916 (9th Cir. 1999) (quoting Bacon v. City of Los Angeles, 843 F.2d 372, 374 (9th Cir. 1988)). Equitable tolling is inappropriate, however, "where the claimant failed to exercise due diligence in preserving [her] legal rights." Irwin v. Dep't of Veteran Affairs, 498 U.S. 89, 96 (1990).

Once again, Plaintiffs allege they are entitled to equitable tolling related to the statute of limitations for their claims based upon Sloan v. General Motors. (Doc. 15 at 21) However, in the First Amended Complaint, Plaintiffs continue to provide no other information about Sloan v. General Motors or how it relates to them. On the other hand, the body of this section of the complaint refers to Fenner v. General Motors LLC, Case No. 1:17-cv-11661 TLL PTM. (See id.)

For an earlier lawsuit to provide the basis for equitable tolling, "[t]he timely notice requirement essentially means that the first claim must have been filed within the statutory period." Downs v. Dep't of Water & Power, 58 Cal.App.4th 1093, 1100 (1997) (quoting Collier v. City of Pasadena, 142 Cal.App.3d 917, 922-923 (1983)). However, as noted above, Fenner was filed after the expiration of the plaintiffs' statute of limitations, and there are insufficient facts alleged to demonstrate the plaintiffs acted reasonably and in good faith and, nevertheless, failed to discover the defect. See Torres v. Ford

Motor Company, 2018 WL 2088268, at *3 n. 2.  Thus, the First Amended Complaint fails demonstrate the plaintiffs are entitled to equitable tolling.

          4.      Fraudulent concealment

Plaintiffs contend the statute of limitations is tolled because of the doctrine of fraudulent concealment.  (Doc. 15 at 27) Because Plaintiffs fail to allege facts sufficient to support their claims of fraud, as discussed above, the Court finds this doctrine fails to toll the statute of limitations.

**C.    Economic Loss Rule**

Under California law, "purely economic losses are not recoverable in tort."  Copart, Inc. v. Sparta Consulting, Inc., 277 F. Supp.3d 1127, 1152 (E.D. Cal. 2018) (citing S.M. Wilson & Co. v. Smith Int'l, Inc., 587 F.2d 1363, 1376 (9th Cir. 1978))  However, the economic loss rule does not apply where a defendant "breaches a legal duty independent of the contract," such as in an action for fraud or misrepresentation.  Id., (citing Robinson Helicopter Co. v. Dana Corp., 34 Cal. 4th 979 (2004))

Because Plaintiffs have failed to sufficiently plead their fraudulent inducement claims, the Court declines to consider whether the claims are barred by the economic loss doctrine.

**V.    Conclusion and Order**

The facts alleged by Plaintiffs are insufficient to support a conclusion that the statute of limitations should be tolled or to support their claims for fraud.  However, it is not clear that the pleading deficiencies could not be cured by amendment. Consequently, Plaintiffs will receive **one final opportunity** to file a pleading that supports the tolling of the statute of limitations and meets the heightened requirements of Rule 9 for claims grounded in fraud.

**In preparing a Second Amended Complaint, Plaintiffs SHALL delete duplicative paragraphs and allegations that are not relevant to the matter before the Court**.  Previously, the Court observed that its review of Plaintiffs' pleading "was made much more difficult by the repetitive nature of the complaint." (Doc. at 1, n.1)  The Court identified several instances—and specific paragraphs—that were repetitive and duplicative in nature, yet the duplication remained in the First Amended Complaint.  In addition, the First Amended Complaint continues to have allegations concerning other vehicle models and manufacturers, such as Volvo, Fiat Chrysler, and Mercedes.

Such allegations are not relevant or appropriate, and should they remain may be subject to a motion under Rule 12(f) for immaterial allegations. Moreover, counsel's failure to comply with the Court's order **will** result in an order to show cause re: sanctions. Accordingly, the Court **ORDERS**:

 1. Defendants' motion to dismiss (Doc. 19) is **GRANTED**;
 2. Plaintiffs' fourth and fifth causes of action are **DISMISSED** with leave to amend;
 3. Any amended complaint may be filed within 14 days. If the plaintiffs do not amend within this time, the action will proceed only on the first, second, and third causes of action.

IT IS SO ORDERED.

Dated: **April 29, 2019**              **/s/ Jennifer L. Thurston**
UNITED STATES MAGISTRATE JUDGE